

**FILED**

NOV 18 2021

Clerk of Court, United States District Court
Ohio Northern District - CLEVELAND

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

LARS ST. JOHN

Plaintiff,

v.

CUYAHOGA METROPOLITAN HOUSING
AUTHORITY (CMHA), U.S DEPARTMENT OF
HOUSING & URBAN DEVELOPMENT (HUD),
JEFFEREY K. PATTERSON,
DARLENE SLEDGE,
DIANA HOCKETT STUBBS,

ROBERTA CLEVELAND, ALYSE DISMOND/
OR DESMOND, ADRIENNE PAGE
LE ANA PEEBLES, ANGELA RICE
CUYAHOGA METROPOLITAN HOUSING
POLICE DEPARTMENT, ANDRE'S GONZALEZ
CORNELL GRIMES, TYSHAWN HARRIS,

Defendant(s)

CASE NO 1 : 21 CV 2198

JUDGE: JUDGE BARKER

SIX COUNTS: MAG. JUDGE BAUGHMAN

*COUNT I: DISCRIMINATION- IN VIOLAT-
ION OF O.R.C. 4112.02 H(1)(2)(3)(4); CIVIL
RIGHTS ACT OF 1964 TITLE VI; 42
3613; SEC. 804 [42 U.S.C. 3604]; FAIR
HOUSING ACT 1968 TITLE VIII,
42 U.S.C.3631
*COUNT II: HARASSMENT- IN VIOLA-
TION FAIR HOUSING ACT 1968;
 HOSTILE ENVIRONMENT HARASSMENT,
 [OCTOBER 14, 2016]

*POLICE MISCONDUCT-COUNT(S) III
 UNLAWFUL ENTRY, IV: WARRANTLESS
 ENTRY, V: UNLAWFUL SEARCH & SEIZURE,
 VI: EXCESSIVE FORCE- IN VIOLATION OF
 42 U.S.C. 1983; FOURTH AMENDMENT
 OF THE UNITED STATES CONSTITUTION;
 18 U.S.C. 242; 18 U.S.C. 249; 42 U.S.C.
 3631;
***Demand For Jury Trial On All Issues Triable
 Of Right By A Jury, Pursuant To Fed. R. Civ.
 P. 38.

### I.      PRELIMINARY STATEMENT

1.      Plaintiff Lars St. John brings this action seeking monetary relief against Defendant

Cuyahoga Metropolitan Housing Authority ("CMHA") U.S. Department of Housing and

Urban Development ("HUD"), Jeffery K. Patterson, Diana Hockett Stubbs, Andre's Gonzalez,

Roberta Cleveland, Alyse Dismond or Desmond, Adrienne Page, Le Ana Peebles, Angela

Rice, Darlene Sledge, Cuyahoga Metropolitan Housing Authority Police Department

("CMHA" Police Dept.), Cornell Grimes, Tyshawn Harris;

for their unconstitutional acts of Discrimination, Harassment and Police Misconduct,

against Plaintiff Lars St. John in violation of his rights under 4112.02 O.R.C.(H) 1,2,3,4

Civil Rights Act Of 1964 Title VI, {[Fair Housing Act 1968 Title VIII, "Hostile Environment

Harassment" October 14, 2016]}, 42 U.S.C. 1983, Fourth Amendment of the United States

Constitution, 18 U.S.C. 242, 18 U.S.C. 249, 42 U.S.C. 3631; 42 U.S.C. 3613; 42 U.S.C. 3604

## II.    JURISDICTION AND VENUE

1. This Court has original jurisdiction in this action under 28 U.S.C. 1331 because Plaintiff
asserts claims against the Defendant(s) under the laws of the United States.

2. This Court has original jurisdiction in this action under 28 U.S.C. 1343(a)(3) because the
Plaintiff asserts claims against the Defendant to redress deprivations under color of
state law of rights and privileges secured by Acts of Congress providing equal rights of
citizens.

3. This Court has original jurisdiction in this action under 28 U.S.C. 1343(a)(4) because
Plaintiff asserts claims against Defendant to recover damages and to secure equitable relief
under the Act of Congress providing for the protection of civil rights.

4. Venue lies properly in the district pursuant to 28 U. S. C. 1391.  The Northern District
of Ohio is the judicial district in which: (i) all of the actions and omissions that give rise to
Plaintiff's claims occurred, (ii) CMHA's principal place of business is located, and (iii) CMHA,
HUD and CMHA Police Dept. conducts its business.

2.

### III.        **THE PARTIES**

5.   Plaintiff is an adult individual and citizen of the United States who resides in Cleve-
land, Ohio at Beachcrest Property.

6.   Defendants CMHA, HUD, CMHA Police Department is a body corporate and politic

organized and existing under the laws of the state of Ohio, Ohio Rev. Code Chapter 3735.

CMHA has headquarters located at 8120 Kinsman Rd., Cleveland, Ohio. HUD headquarters is

located at 1350 Euclid Avenue and CMHA Police Dept. is located at 5715 Woodland

Avenue Cleveland, Ohio. Jeffery K. Patterson CMHA CEO,

Pamela E. Ashby HUD Field Director; Cleveland, Ohio office, Diana Hockett Stubbs- site mgr.,

Alyse Desmond or Dismond - site mgr., Adrienne Page site mgr., Le Ana Peebles - site mgr.,

Roberta Cleveland administrative assistant, Angela Rice administrative assistant,

Cornell Grimes- police officer, Tyshawn Harris – police officer, Andre's Gonzalez- Police Chief

Darlene Sledge – Amp Leader "site mgr. supervisor".

### IV        **BACKGROUND**

7.   From the initial onset of Plaintiff's application dated December 2010.  Plaintiff has been

subjected to the discrimination practices of Cuyahoga Metropolitan Housing Authority

("CMHA").  Where for more than seven years he remained on waiting list, bypassed when his

"number" came up for housing; forcing Plaintiff to file a discrimination lawsuit in late 2017.

In turn prompted CMHA in early 2018 to move Plaintiff to the "top" of the waiting list;

sending him an orientation letter in early 2018.  Followed by an award letter dated April 9,

2018. (See Exhibit A)

3.

8.  From day one of receiving his award letter to the present day; CMHA et al., has demonstrated vicious and malicious acts of discrimination, harassment and police misconduct towards Plaintiff.  CMHA and CMHA Police is a federal program funded by the U.S. Department of Urban Housing Development ("HUD").  "HUD", funding a culture of employment and residency of nefarious, immoral individuals.  CMHA employees are ninety-nine percent Black; under the dictatorship direction of CEO Jeffery K. Patterson. Nepotism has ran rapid throughout CMHA.  Most CMHA employees are somehow related via blood relative or that of a personal friend.  CMHA also has a history/culture where CMHA employees, site managers, maintenance workers are having sexual relationships or encounters with CMHA residents as well as fellow workers; i.e. In 2019 married female site mgr. at Bohn Tower (CMHA property) was spending most of her working hours in a male tenant apartment.  She was also caught having sex with the tenant in the men's public restroom located on the buildings first floor.  Site mgr. husband came to CMHA Bohn property with a weapon to confront tenant.

9.  At Beachcrest Property where Plaintiff resides; in 2019 administrative assistant Roberta Cleveland was caught having sex in her office with two maintenance workers (1.) James Brown. It is also a known fact maintenance worker James Brown has and is having sexual relations with tenants as well.  One being tenant Lois Ford who resides in apartment 313 across the hall from Plaintiff.  This sexual relationship has been ongoing since James Brown started working at Beachcrest to the present day.  Lois Ford providing lunch as well as sex for James Brown.

4.

10. CMHA Police Department as well is filled with immoral, unscrupulous individuals; i.e. On November 13, 2020 Officer James Griffiths according to the autopsy shot and killed nineteen year old Arthur Keith in the back as he was fleeing a scene. In 2018 Officer Christopher Collins was Indicted on several charges in different counties. One being having sex with a minor boy. Also Officer David Ayers was convicted in 2007 for aggravated murder, aggravated burglary and robbery. It is clear one needs to be morally bankrupt in order to gain employment from CMHA or CMHA Police Dept. in order to build and maintain the corrupt and oppressed world of CMHA created and funded by U.S. Department of Housing and Urban Development ("HUD").

## V. COUNT I: DISCRIMINATION

**STATEMENT OF FACTS:**

1. Plaintiff Lars St. John received award letter for a **one** bedroom apartment dated April 9, 2018. (See Exhibit A)

2. In May 2018 Plaintiff was shown one apartment by site mgr. Ms. Stubbs. Plaintiff was shown an efficiency/studio apartment. Plaintiff expressed to site mgr. that he was awarded a one bedroom apartment; then he asked if he could see a one bedroom. Site mgr. made a false statement to Plaintiff stating "All the apartments are the same, they look the same" "There are no one bedroom apartments". Plaintiff called Jessica Ball; person who issued Plaintiff award letter. Ms. Ball told Plaintiff "if you pass on the efficiency, you will lose your place in line and would have to start over". Therefore Plaintiff was forced to take the efficiency. On May 18, 2018 Plaintiff signed the lease. (See Exhibit B)

5.

3.   What was told by site mgr. Ms. Stubbs to Plaintiff was false.  At that time Plaintiff did not have knowledge of Beachcrest Property with regard to unit size.  Since that time Plaintiff has learned Beachcrest Property consists of two buildings A & B; with 18 studio units, 178 one bedroom units and 39 two bedroom units.  About a year later is when Plaintiff (Black male) learned there were several one bedrooms vacant at the time in which he moved in.  One being the apt. adjacent to his unit #312.  Which was given to Monique Swanson-"Reed" (Black female).  According to Ms. Swanson she moved in May 2018.  In January 2019; another one bedroom became available on the floor Plaintiff resides (unit #316).  The apartment was given to White male James Butler.

4.   On the day Plaintiff viewed the apartment (early May 2018); he was told by Ms. Stubbs the air conditioner did not work and needed to be replaced. After calling the office several times inquiring about the air conditioner with no clear answer. In July 2018 Plaintiff called Asset Mgt. where they looked up the order and saw the order was placed on June 30, 2018 by Roberta Cleveland.  At the hands of Ms. Stubbs and Roberta Cleveland; Plaintiff had to suffer in extreme heat for two months.

5.   After moving in site mgr. and maintenance worker James Brown told Plaintiff there was a "work order" placed for a new bathroom vanity.  However, Plaintiff wasn't

6.

concerned about a new vanity.  He was concerned about the leaking pipe under bath-

room sink.  The annual HUD inspector in December 2018 wrote a report and work order

for the repair of the bathroom sink.  To this day the vanity has not been installed and the

sink hasn't been repaired. Due to extreme pipe leakage Plaintiff has been unable to use

his bathroom sink since moving in.

> 6.  In May 2019 Plaintiff placed a work order when his garbage disposal
> stopped working.  As of today the garbage disposal hasn't been repaired nor
> replaced.

> 7.  On December 18, 2019 Plaintiff woke up to running water from his kitchen

sink, where a thin piece of plastic/rubber used as a pipe had snapped in half causing a water to

gush from the pipe.  Plaintiff didn't have tools to turn off water.  Also the valve that could have

turned water off was missing.  Plaintiff had to call Fire Dept. for assistance.  Later that morning

maintenance worker James Brown arrived to fix pipe and dry the floor.  He showing the valve

and pipe upon his arrival.  He replaced the pipe but chose not to replace the valve.  Plaintiff

called office letting Adrienne Page know.  He returned pretending to tighten the faucet

handles instead of what was asked.  When Plaintiff asked about the valve.  He stated "you

don't have to worry about it, the pipe won't break again".  He left without replacing the valve.

In early June 2021 Plaintiff began hearing a strange sound from his toilet.  Where he felt it was

coming from the water tank.  Plaintiff called the 1-800# on tank.  Plaintiff spoke to a "Sloan

Flushmate" employee.  Plaintiff read model no. M-101526-F-3 to employee; where

employee then stated the model Plaintiff has was recalled due to risk of exploding & shatter-

ing water tank via lawsuit and Court order in 2012.

7.

CMHA CEO Jeffery K. Patterson down to site managers were made known of violations

of one bedroom award letter pertaining to Plaintiff given a studio as well as work orders/

repairs not executed.  (See Exhibits C, D, E)

## VI  COUNT II:                          HARASSMENT

### STATEMENT OF FACTS:

*Harassment Fair Housing…"Unwelcome conduct that is sufficiently severe or pervasive that*

*it interferes with or deprives the person of the right to use and enjoy their housing.*

*Hostile Environment Harassment Rule: The "Rule" effective October 14, 2016 states that*

*harassment can be "written, verbal, or other conduct and does not require physical contact" and*

*that a **"single"** incident of harassment may constitute a discriminatory housing practice, where*

the *incident is sufficiently severe…"*

8.   Plaintiff signed lease May 18, 2018.  Diana Hockett Stubbs site mgr:; Roberta

Cleveland administrative assistant.

9.   On May 18, 2018 sat down with Roberta Cleveland to fill out and sign forms

and lease.  Ms. Cleveland first words to Plaintiff were, how old are you?  Which Plaintiff found

odd, being his information was written in his file.  Ms. Cleveland went onto to comment on how

young he looks and remarks about his physical beauty.  All which made Plaintiff uncomfortable

seeing Plaintiff did not trust her.  Due to the fact a week earlier Ms. Cleveland lied about

not receiving a faxed copy of Plaintiff's electric bill.  Which is a requirement for leasing an

apartment; "having electric bill in tenants name".

During this time Plaintiff had given his driver's license to Ms. Stubbs to copy.  Instead of

handing it back to Plaintiff directly, she gave it to maintenance worker James Brown to give

to Plaintiff who was in the community room across the hall.  Giving James Brown access to

Plaintiff's personal information.  James Brown was always around or showed up; When Plaint-

iff viewed his apartment;  he came to the apartment and knocked on the door; as well as on

the day he signed the lease; "hanging out" in the office.

      10.  In July 2018 site mgr. Stubbs took a medical leave and never returned to

Beachcrest Property.  Leaving Beachcrest without a site manager until late 2018; when Alyse
Dismond was placed  at Beachcrest.

      11. By November 2018 chronic harassment against Plaintiff began.  When

Plaintiff would go to the office to pick up postal or parcel packages, Roberta

Cleveland would on a regular basis imply or state to Plaintiff that there were

"hidden cameras" in his apartment.

      12. Alyse Dismond started 2019 with a false statement in memo stating the
        intercom

was restored.  The intercom system was not restored; which not only affects Plaintiff but all

tenants. To this day the intercom system in building A has not worked. (See Exhibit F)

      13. Plaintiff received annual recertification letter dated January 7, 2019;

for appointment with Sabrina Jackson on January 24, 2019. Plaintiff was on time for interview.

When Plaintiff arrived Ms. Desmond told Plaintiff Ms. Jackson is a No Show.  Stating she came

and left without an explanation.  Out of pure malice Ms. Dismond sent Plaintiff a non-

compliance recertification letter; notice of termination of lease and invitation to explain.

Ms Dismond knew Plaintiff went to appointment and Ms. Jackson was a no show.

Ms. Dismond harassing Plaintiff: causing unnecessary mental anguish to the Plaintiff.  Ms.

Jackson knew she missed Plaintiff's interview and sent him a new interview date. (See Ex. H)

14. By early 2019 tenants Lois Ford and Monique Swanson-"Reed" who live adjacent

to and across the hall from Plaintiff had ingratiated themselves to Ms. Dismond. Lois Ford bring-

ing her a slice of "cake" or offering her a slice of "cake" when she would come to her apart-

ment.  Both Ms. Dismond and Roberta Cleveland freely discussed personal information

regarding Plaintiff as well as having them deliver personal unsealed letters to Plaintiff"s

apartment containing personal information.  They formed a "Ya Ya Sisterhood" targeting

Plaintiff with harassment, jealousy, and hatred.  Their actions has deprived Plaintiff from the

enjoyment of his home.

15. Site managers and administrative assistants used bogus or fraudulent exterminating notices, extermi-

nating  treatments, inspections, housing inspections, HUD inspections, and repair notices to

harass and or harm Plaintiff by obsessively wanting to gain access to his apartment.

16. Plaintiff received a Terminix IPM notice for February 25, 2019. (See Exhibit I)

17. Plaintiff received a notice for bed bug Terminix mass unit inspection for March 8, 2019 (See Exhibit J)

10.

18. Plaintiff received a notice for maintenance to gain access to his apartment for

the "entire" month of March 2019. (See Exhibit K) Where maintenance was a No Show for the month.

19) Plaintiff received a personal notice to spray for bed bugs on March 11, 2019.(See Ex. L)

20) Dated March 5, 2019; Alyse Dismond sent Plaintiff a fraudulent letter stating "we" made several attempts to access Plaintiff's apartment to replace a smoke detector.  The facts are Plaintiff received a new smoke detector in October 2018 with three witnesses who can testify to the installment.  Ms. Dismond mentioned Plaintiff's lock key chain.  This clearly illustrates Ms. Desmond tried to gain access to Plaintiff's apartment using a "fraudulent" work order. (See Exhibit M)

21) Out of concern for the chronic haraasment.  Plaintiff sent Ms. Dismond A Cease And Desist letter. (See Exhibit N)

22) Plaintiff received notice for bed bug inspection for May 21, 2019. (See Exhibit O)

23) Plaintiff received notice for IPM bed bug inspection.  A bed bug inspection and IPM inspection is the same.  However Ms. Dismond wanted to subject Plaintiff to weekly (Feb. 25, 2019, March 8, 2019, See Exhibits I, J) and bi-weekly inspections (See Exhibits O, P) along with treatment for March 11, 2019 three days later. (See Exhibit L)

24) After Plaintiff sent Ms. Desmond a Cease And Desist letter;

11.

out of retaliation, hate, malice, and vindictiveness Ms. Dismond continued her

harassment against Plaintiff.  Plaintiff received notice for annual HUD inspection dated March

27, 2019; Where units are randomly chosen for inspection.  Inspection dates were April 9, 2019

to April 11, 2019.  Plaintiff's apt. was not chosen. (See Exhibit Q) Ms. Dismond typed and signed

a fraudulent UPCS HUD inspection letter where the letter date and inspection date are the

same. (See Exhibit R) Also a notice to terminate lease based on fraudulent letter, attached a tit

for tat letter titled Exhibit A in reference to Plaintiff's Cease And Desist letter. (See Exhibits S,T)

Plaintiff contacted Ms. Dismond's supervisor Ms. Sledge.  Where Ms. Sledge stated verifying

the HUD inspector came in April and she would "talk" to Ms. Dismond.

25) Plaintiff received notice for bed bug treatment for July 2, 2019.  Delivered

by tenant Lois Ford who lives across the hall from Plaintiff in apt. 313.  Terminix sprayed

Plaintiff's apt on July 2, 2019. Without notice On July 15, 2019 a Terminix employee knocked on

Plaintiff's door, stating Ms. Dismond had sent him.  Plaintiff explained his apt. had been treated

less than two weeks ago.  Ms. Dismond then sent Plaintiff a self- addressed notice for

treatment for July 25, 2019. (See Exhibits U, V)

26) Ms. Dismond is removed from Beachcrest  summer 2019.  Plaintiff

receives extermination letter for extermination less than one month from last notice.

Dated for August 20, 2019. (See Exhibit W) Adrienne Page starts as site manager sometime

in October 2019.

12.

27) Plaintiff received notice for repairs. Notice did not state repairs needed.

Repair date for October 24, 2019. No Show; no one came to Plaintiff's apartment. (See

Exhibit X) On November 4, 2019 Adrienne Page without notice sent a random non- Beachcrest,

non- CMHA employee to Plaintiff's apartment. The said person stated he was there for repairs.

But could not state what the repairs were. Plaintiff told said person he could schedule an

appointment. The said person stated he was here all week. Both parties agreed to Wednesday

November 6, 2019 @ 10:00 a.m. The said person was a No Show.

28) Plaintiff receives bed bug treatment notice for October 29, 2019. Less

than the three months from last treatment. No Show; no one came. (See Exhibit Y)

29) Plaintiff received extermination notice for November 14, 2019. (See

Exhibit Z) Four days later a roach extermination is scheduled for November 19, 2019. (See

Exhibit 1)

30) On November 22, 2019 while Plaintiff was away Adrienne Page sent the

same random person from par. 27.. Nov. 4, 2019- to Plaintiff's apartment. Giving the individual

who is a non Beachcrest, non CMHA employee keys and instructions to enter. Plaintiff had a

key lock chain in place, therefore the perpetrator could not enter. Leaving a door notice

stating will return November 27, 2019 for bed bug inspection. (See Exhibit 12)

13.

31) Due to Ms. Page's "associate" unable to trespass on November 22, 2019

onto Plaintiff's apt. Adrienne Page plotted and planned an ambush for November 27, 2019;

Where she along with two CMHA police officers and three unidentified cohorts (one being

the individual from Nov. 4 and Nov. 22nd incidents) ambushed Plaintiff. Plaintiff was held at gun

point while all stormed into Plaintiff's apt. One perpetrator cutting off Plaintiff's key lock chain;

while the other two perpetrators flipped Plaintiff's furniture looking for "bed bugs" and any-

thing of value. No trace of bed bugs were found.

32) Plaintiff received "personal" notice for "Bed Bug" inspection for dates of

 December 30, 31 2019. (See Exhibit 2)

33) Four days later Plaintiff received another bed bug inspection for January

2, 2020. It is clear Adrienne Page did everything in her power to disrupt Plaintiff's holiday

season. (See Exhibit 3)

34) Le Ana Peebles becomes new site manager at Beachcrest in February 2020.

Plaintiff received notice for repairs. CMHA/Ms. Peebles is stating a two week "Open House"

for repairs. NO Show; no one came to Plaintiff's apt. Notice was passed out on February 21,

2020; letter dated February 20, 2020. (See Exhibit 4)

35) Plaintiff received a notice mass bed bug inspection for February 20, 2020.

A No Show. (See Exhibit 5)

36) Plaintiff received notice extermination during state lockdown for Covid-19.

April 27, 28, 2020. (See Exhibit 6)

37) Exterminations are "quarterly"- once every three months. However two

14.

months after last extermination; a new appointment is scheduled for June 30, 2020.

(See Exhibit 7)

38) Less than two months later Angela Rice sends Plaintiff personal

extermination letter without forty-eight hour notice. Dated July 27, 2020. (See Exhibit 8)

39) Less than one month later Plaintiff receives another exterminating

notice for August 21, 2020. (See Exhibit 9)

40) Plaintiff received extermination notice one month later. Upon entry

to Plaintiff's apt. Plaintiff caught Terminix employee **"planting"** a bed bug.

 Then employee saying to Plaintiff ooh! ooh! look. The Plaintiff called him on his

act; Terminix employee denied it. Terminix employee did not spray. Plaintiff called Ms.

Peebles letting her know and requesting she send him back to spray Plaintiff's apt. Ms.

Peebles did not ask Terminix employee to return. Plaintiff texted Ms. Peebles supervisor

Ms. Sledge letting her know what took place. (See Exhibits 10, 11)

41) Plaintiff receives "personal" notice for lead base paint test. Schedule for

October 21, 22, 2020. Lead base paint was banned in 1978. No Show; no one came to

Plaintiff's apt. (See Exhibit 13)

42) Plaintiff receives less than forty-eight hour notice for repairs seven months

after last "repair notice. Letter date September 30, 2020; delivered October 1, 2020 at 2:50

p.m. The notice was for maintenance to come "look" at the repairs needed. Not to fix bath-

room sink or replace garbage disposal. (See Exhibit 14)

43) Plaintiff receives exterminating notice scheduled for November 30, 2020.
(See Exhibit 15)

15.

44. Plaintiff receives a threatening letter from Ms. Peebles. Telling Plaintiff to sign his rights away for "heat treatment" concerning bed bugs. Stating failing to comply can lead to eviction. Ms. Peebles bypassed preventative treatment; heat treatment would require Plaintiff to sign a waiver not holding CMHA nor Terminix responsible for theft or damage to his property. Plaintiff sent supervisor Ms. Sledge a text in September 2020 regarding "preventative treatment". With no response from Ms. Sledge nor Ms. Peebles until Ms. Peebles sent Plaintiff threatening letter three months later. (See Exhibits 16, 17)

45) Housekeeping inspection notice for a two week open house period dated March 18, 2021. Inspections scheduled for April 12, 2021 – April 23, 2021. Ms. Peebles showed up without proper legal notice to Plaintiff's apt. on April 29, 2021; Between 12:30 and 1:00 p.m. Ms. Peebles never came inside Plaintiff's apt. to inspect. She handed Plaintiff a form to sign while she waited in the hallway. Several tenants told Plaintiff being home all day, Ms. Peebles never came to their apt. No inspection. Plaintiff texted Ms. Sledge letting her know. (See Exhibits 18, 19)

46) Plaintiff receives exterminating notice for April 14, 2021. No Show; no one came to Plaintiffs apt. (See Exhibit 20)

47) Notice for annual HUD inspection scheduled for May 4, 2021 – May 7, 2021. Inspector on May 6, 2021 was instructed to by maintenance worker James Brown to inspect all units on Plaintiff's floor except for his. Plaintiff texted Ms. Sledge letting her know. Ms. Sledge never responded. (See Exhibits 19. 21)

48) Plaintiff receives extermination notice scheduled for May 24, 2021. Maintenance worker James Brown instructed other maintenance worker (name unknown) and Terminix employee to skip Plaintiff's apt. (See Exhibit 23)

49) Plaintiff receives a less than twenty-four hour notice "personally" addressed. Stating Plaintiff's apt. is in the "**vincinity**" of another unit that was treated. Exterminating company stated ('Rid All') Plaintiff never heard of. When Rid All employee arrived Plaintiff asked for i.d. Rid All employee could not produce identification. Based on employee not having identification and a less than twenty-four hour notice; Plaintiff out of safety precautions chose not to let him in. Rid All employee only went to Plaintiff's apt. on his floor. (See Exhibit 24)

50) Plaintiff receives notice for bed bug inspection one week later June 9, 2021. (See Ex. 25)

51) Ms. Peebles sends Plaintiff another addressed letter stating Plaintiff's unit is in the "**vincinity**" of another treated unit; Scheduled for July 30, 2021. Terminix employee only went to Plaintiff's apartment on his floor. (See Exhibit 26)

52) Plaintiff receives notice for "balcony" inspection scheduled for June 28, 2021 – June 30, 2021. Balcony inspections are done during "housekeeping" inspection; which site mgr. failed to execute; as stated in par. 45. A No Show; Ms. Peebles never came to Plaintiff's apt.

53) Plaintiff received a threatening letter dated July 2, 2021 for extermination. Stating if you are not prepared at this time, it will lead to a 30 day lease termination notice. The exterminator was a No Show on July 2, 2021. He came without notice on Wednesday July 7, 2021 at 11:20 a.m; the day the water was shut off in the building between 9:00 a.m. – 5:00 p.m. (See Exhibit 28) Mgt. sent extermination notice for August 23, 2021; didn't spray. (See Exhibit 31)

54)  Plaintiff received notice for battery replacement on October 29, 2021 for smoke and

carbon monoxide detectors.  New dual all in one smoke and carbon monoxide detectors were

installed in all units in September 2021.  At that time tenants and management was told

unit and battery life is good for ten years.  No Show. No one came to Plaintiff's apt.

(See Exhibit 29)

**VII**                                **POLICE MISCONDUCT**

**COUNT THREE: UNLAWFUL ENTRY**
**COUNT FOUR:  WARRANTLESS ENTRY**
**COUNT V:  UNLAWFUL SEARCH AND SEIZURE**
**COUNT VI:  EXCESSIVE FORCE**

*The Fourth Amendment protects against "unreasonable searches and seizures" U.S. Const.*

*Amend IV.  "The home has properly been regarded as among the most highly protected zones*

*of privacy, and the sanctity of private dwellings is ordinarily afforded the most stringent Fourth*

*Amendment protection." Ayeni v. Mottola, 35 F. 3d 680, 685 (2d Cir. 1994) abrogated on other*

*grounds, Wilson v. Layne, 526 U.S. 603, 618 (1999).  Indeed "[i]t is axiomatic that the physical*

*entry of the home is the chief evil against which the wording of the Fourth Amendment is*

*directed." Welsh v. Wisconsin, 466 U.S. 740, 748 (1984).  It is thus a "basic principle of Fourth*

*Amendment law[] that searches and seizures inside a home without a warrant are presumpt-*

*ively unreasonable." Id at 749 "This protection adheres to whether the seizure is for purposes*

*of law enforcement or due to an individual's mental illness."  Myers v. Patterson, 819 F. 3d 625,*

*632 (2d Cir. 2016)*

*18.*

*For the warrantless entry of a home to be rendered reasonable despite the presumption to the contrary it must "meet an exception to the warrant requirement." Anthony v. City of New York, 339 F. 3d 129, 135 (2d Cir. 2003)*

**STATEMENT OF FACTS:**

55) [(In relation/continuance Plaintiff's Complaint Discrimination Section; Par. 31 Due to....)]

On November 22, 2019 Site manager Adrienne Page sent an associate of hers to trespass onto Plaintiff's Lars St. John apartment. The cohort was met with Plaintiff's key lock chain, therefore he was unable to enter and act out his and Ms. Page's "agenda" This same individual was sent to Plaintiff's apartment without notice on November 4, 2019. He and Ms. Page's plot was halted then due to Plaintiff was home; preventing him from trespassing. Enraged and unable to enter on Nov. 22nd, Ms. Page left a door tag stating "management will be in your unit" dated for November 27, 2021; the day before Thanksgiving. During the five days Ms. Page plotted and planned an ambush consisting of two or three plain closed individual males along with two CMHA police officer's. Although plaintiff was singled out and was the only tenant having his apartment inspected. Plaintiff was willing to go through with the inspection. Between ten and eleven a.m. Plaintiff heard a knock on his door. He asked who is it? Person replied Ms. Page. Plaintiff wasn't dressed; asked her to please wait a minute. Less than a minute later a loud banging on the door. Male voice saying police open up. Plaintiff requesting more time to get dressed. Seconds later police banging on door stating "open up or I'm coming in."

56) Plaintiff surprised, opened the door asking police "why are you here?" Officer

Cornell Grimes couldn't answer. He pointed to Adrienne Page stating I'll let her tell you.

Ms. Page spewing lies she concocted. Stating her cohort came to Plaintiff's apartment,

admitting to opening the door with a key. (Which is illegal) She went on to say Plaintiff

was sitting on the couch, watching tv. Plaintiff would not remove chain and let her co-

hort in. ( if were true Plaintiff is to let a complete stranger into his home for unknown

reasons?) etc etc. Plaintiff told her and police she was lying; he wasn't home at that

time (3:50 p.m.), he was downtown Cleveland which he later proved. (See Exhibit 12).

57) Plaintiff stated he wasn't going to stand there and listen to these lies. Officer

Cornell Grimes becomes more hostile, irate, belligerent and crazed. Tenants on Plaintiff's

floor came out of their apartments to see what was going on. Cornell Grimes ordered them

to go back into their apartments and close the door. Cornell Grimes threatens Plaintiff

Lars St. John placing his hand on his gun and taser, screaming "move back (meaning allow them

to enter Plaintiff apt.) or this is about to be the worse day of your life." Plaintiff grew fear for

life and limb moved out of the door way. Where Adrienne Page, three unidentified Black males

CMHA officers Cornell Grimes and Tyshawn Harris entered Plaintiff's apartment. Cornell

Grimes ordering Plaintiff to sit on the couch. When one of the Black males wanted to search

the couch; Cornell Grimes ordered Plaintiff to stand in the corner and not to move all while

having his hand on his gun. Two Black males flipped Plaintiff's furniture while one used a

chain saw to cut off Plaintiff's key lock chain. No bed bugs were found. The six individuals

left leaving Plaintiff traumatized begging for help.

58) After the perpetrators left, Plaintiff made several phone calls. First Plaintiff called CMHA

Police Dept. where he spoke to Cornell Grimes and Tyshawn Harris supervisor.

Supervisor's statement was "they should not have been there." So dismayed by

what plaintiff told him; he offered to bring citizen complaint form to Plaintiff. Plaintiff's

second call was to Ms. Page's supervisor Ms. Sledge; where Plaintiff told her what happened.

She asked Plaintiff to text her a copy of the door tag and post office receipt. Plaintiff's third

call was to CMHA customer service where he spoke to a Ms. Britt. Ms. Britt was cavalier

about what she heard even secretly placing Plaintiff on speaker, secretly calling Aaron Cooper

to listen in without Plaintiff knowing and then hearing giggles and laughter in the background.

On December 3, 2019 Plaintiff wrote to HUD secretary Ben Carson and Jeffery K. Patterson

letting them know what transpired on November 27,2019. (See Exhibits D, 30) In January 2020

Plaintiff received an acknowledgement of receipt letter from HUD c/o Pamela Ashby. Where

Ms. Ashby repeated false claims Aaron Cooper spoke to Plaintiff. In February 2020 Plaintiff

received a call from Detective Kyle White; stating he was assigned to investigate the crime on

November 27, 2019. Kyle White never asked Plaintiff any questions for that day nor did he

ever follow up with Plaintiff. Kyle White never returned Plaintiff's calls and by May of 2020

Plaintiff was told his investigation was given to Detective "Smiddy". By September 2020

no one had contacted Plaintiff regarding the attack on Nov. 27, 2019. Plaintiff reached out to

Ms. Ashby stating it had been over nine months since filing the citizen complaint. A month later

Plaintiff receives a **cover up** letter from CMHA Police Chief Gonzalez. Stating "unable to

substantiate misconduct" but Andre's Gonzalez **contradicts** the above statement by stating

"The CMHA Police Department will continue to maintain and enforce a strict standard of conduct from all its members".  Although what happened was a personal attack disguised as a "inspection" which was unauthorized without notice.  Any issues regarding "inspections" is a civil matter under Title C.F.R. 966.4 not a police matter.  Which officer's Grimes and Harris knew, but made the choice to violate Plaintiff's civil rights regardless.

## VIII CONCLUSION:

59) Plaintiff Lars St. John had to endure, defend and protect himself from a toxic environment of discrimination, harassment and police misconduct under the umbrella of CMHA, HUD and CMHA Police Department.  As well as the criminal behavior/actions of the tenants that surrounds him i.e. Two months after Plaintiff moved into Beachcrest;  the first person he met "Gene" Black male early seventies, was taken into Beachcrest mens public restroom on first floor and raped by a male tenant as 5-6 male tenants cheered, watched and waited in the lobby.  Never attempting to stop the attack nor call for help.  CMHA police under the instructions of Jeffery K. Patterson did not arrest the rapist.  The rape was kept quiet sending the rapist to a mental institution.  Also on July 4, 2020 Plaintiff's neighbor Monique Swanson-Reed robbed a woman on Beachcrest property.  Bumping into the woman knocking the woman and purse to the ground; where Ms. Swanson-Reed was able to steal over three-hundred dollars from her purse and run back to her apartment.  The victim identified Ms. Swanson as the perpetrator.  However on the day of the crime CMHA failed to arrest Ms. Swanson-Reed.  Only talking to her via a closed door.  Swanson-Reed was eventually arrest-ed on December 4, 2020 and convicted on July 15, 2021.

22.

60) CMHA did file an eviction action against Ms. Swanson-Reed regarding the robbery and death threats she made towards other tenants. However, mid eviction process CMHA dismissed the action allowing the convicted felon to remain at Beachcrest as a PHA tenant; although CMHA had grounds for eviction.

61) With the preponderance of evidence stated above, anyone of sound mind can clearly see Plaintiff's Constitutional Rights were and continue to be violated.

62) Defendant's CMHA et., al, HUD, CMHA Police Department et., al violated Plaintiff's rights under 42 U.S.C. 1983, 42 U.S.C. 3631, Fourth Amendment, [{Fair Housing Act of 1968 Title VIII; Hostile Environment Harassment, 2016]}, 18 U.S.C. 242, 18 U.S.C. 249; 42 U.S.C. 3613; 42 U.S.C. 3604.

63) Defendant(s) CMHA, HUD and CMHA Police Department is liable to Plaintiff under 42 U.S.C. 1983 for the deprivation of his rights.

## IX.                          PRAYER FOR RELIEF

64)    **WHEREFORE**, Plaintiff seeks the following relief in favor of himself.

(a) That an order be entered finding and declaring that Defendant(s) has violated the civil rights of the Plaintiff as alleged in this Complaint;

(b) Award compensatory and punitive damages to Plaintiff (for pain, suffering, mental anxiety, civil rights violations) and against Defendant(s) for five million dollars ($5,000.000.00) for each count pursuant to 42 U.S.C 1983 and all statutes stated. A total sum of thirty million dollars ($30,000,000.00)

(c) That the Court grant such other and further relief as may be just and proper.

Respectfully submitted,
Lars St. John *pro'se*

Lars St. John
Larsstjohn@yahoo.com
P.O. Box 14011
Cleveland, Ohio 44114
216-266-7016

Pro' Se Attorney

## JURY DEMAND

Plaintiff demands a trial by jury on all eligible claims and issues.

24.